EGAN, by guardian *ad litem*, Respondent, vs. THE SAWYER &
AUSTIN LUMBER COMPANY, Appellant.

*September 24 — October 13, 1896.*

*Master and servant: Personal injuries to minor employee: Uncovered
saw: Failure to warn: Excessive service: Court and jury: Evidence:
Instructions.*

1. Plaintiff, a minor employee in a sawmill who had had considerable
experience at such work, was injured, while temporarily em-
ployed in throwing blocks from the table of a shingle mill into a
hole in the floor on the opposite side, by his hand coming in con-
tact with a rapidly-revolving saw on such table, so placed that
only about three inches thereof projected upwards. There was
evidence tending to show that the saw was not then in use; that
at such times sawdust accumulated about it to some extent; that
its speed was such that it could not be readily seen; and that
plaintiff did not know of its presence. *Held*, that the question
whether the plaintiff should have been warned or instructed as to
the dangers arising from the presence of the saw was for the
jury.

2. Where it is the duty of an employer to caution his employees as to
the dangers and risks in their employment arising from the pres-
ence of uncovered machinery, the question whether such machin-
ery should have been covered or guarded is ordinarily for the jury.

3. Evidence that three different tasks had been allotted to a minor,
one of which had previously been the sole duty of another em-
ployee, and that they were to a very considerable extent coinci-
dent in their requirements upon his attention, caution, and prompt
action, is *held* sufficient to justify the submission to the jury of

the question whether too great service was required of him, in view of his age, capacity, and judgment.

4. Where there is sufficient evidence to sustain all of three separate charges of negligence, an instruction that the jury might find for the plaintiff "if the defendant was negligent in some of these respects, as stated," was not erroneous.

APPEAL from a judgment of the circuit court for La Crosse county: O. B. WYMAN, Circuit Judge. *Affirmed.*

This was an action by the plaintiff, by his guardian, to recover damages for an injury sustained in consequence of alleged negligence of the defendant, while he was working in its employ, as a laborer, in its steam sawmill. He was not yet nineteen years of age. He testified, in substance, that he was set at work beside an automatic lumber carrier, to lift out of it such pieces of wood as came to him on the same, and put them on a table, to be fitted into shingle blocks. To the right of the place where he was directed to work was a platform four feet square and three feet high, on one end of which was a shingle saw, which was in constant use, operated by one Goodell, who stood with his back to the place where the plaintiff was to stand. About three feet from the shingle saw, and set in the same table and on the same shaft, was another small saw, which extended above the top of the table about three inches. This was all that was visible of it at any time, and it revolved with great rapidity, but, while the plaintiff was there, was unused. He worked as thus directed four days. On the morning of his injury, he was directed by defendant's foreman to do an additional job, that of straightening lumber that came on the chain and fell down, in which case he would have to straighten it out, and put it on another chain. He was thus required to do, for a time, the work of another man. He worked at these two jobs about an hour and a half that morning, when the foreman directed him to come over towards him, and told him to pick up certain blocks on the

table as they came there, and throw them over the table into a certain hole in the floor, and on the other side of it; and he said, "Do the other two jobs there, and do them good," and went away. The plaintiff picked a few blocks off of the table, to throw them on the floor, and the last one he got to throw over, as he threw it, was caught by the small saw, and his hand was drawn onto it, and the fingers of his hand were cut off. He had a mitten on at the time. He had to throw the blocks over the saw somewhat to his left.

The allegations of negligence in the complaint were: (1) That it was a very dangerous work, and to a person of small stature, as the plaintiff, it was difficult to perform it without his hands coming in contact with the unused saw, and that the defendant gave no warning or instruction as to danger from the unused saw, and he did not know it was running; that it was almost covered with sawdust, so that he could not see it, and he was injured when he attempted to throw the first block over. (2) That defendant negligently and carelessly increased his duties, so as to absorb and distract his attention, and make his work unreasonably dangerous. (3) That the defendant negligently and wrongfully permitted said unused saw to run uncovered and without protection. The answer was, in effect, that the work of the defendant was not dangerous; that the plaintiff's injury was the result of his own negligence, in bringing his hand in contact with the saw. The plaintiff further testified that not a word was said to him about the saw; that he *never noticed it*, and took no particular notice of the table; that he noticed soon after that there was quite a bit of sawdust on the table, because there was some on his hand; that the saw was two and three-fourths inches above the table, and was a very small saw; that the machine or elevator he was to perform his second job on carried all the lumber manufactured in the mill, and was about twenty feet from

where he stood, and ran from north to south, and the carrier he was first put to work on ran from east to west. There were thirty-five or forty men employed in the mill. One Casterson, as well as Goodell, worked at or near the table. Goodell picked up the piece plaintiff got hurt with, and shoved it on the table towards him, and the plaintiff caught it as it was about to tip over or fall off. The saw caught it, and his hand was drawn onto the saw. He testified that these two saws run even with the table; *that he knew that at the time.* Being asked if both saws ran at the same time, he said, " I never knew anything about it; they are both together;" that he did not know "how much the saw was in use, nor how much of the time Casterson, who sawed shingle bands with it, was there." He had seen him standing there once or twice with shingle bands, but plaintiff was busy at the time. One Peterson testified that there were some blocks on the table the plaintiff was going to throw over, one longer than the rest; and he reached to take it up, and it struck the band saw, and it knocked it down on the table, and jerked his hand onto the saw. It was caught on the saw that sawed the shingle bands, and it was a little one, that one could see when stopped, but, when running fast, you could see a blue streak,— that was all; that one had to be pretty near to it, and keep his eye on it, to see that saw.

The defendant's foreman testified that he did not give the plaintiff directions to pick up the blocks, and throw them over the table into the hole in the floor; that he did not say "over the table;" that he did not give him two jobs outside of picking the blocks off the floor, and attending to the trimmer carrier; that he never knew of his doing any work on the trimmer. A plan of the situation, location of machinery, etc., was put in evidence by the defendant. It was testified that it was about three feet from where the plaintiff ordinarily stood to where Casterson stood when he

was cutting shingle bands, and it was about six feet from where Casterson stood to where the plaintiff stood in picking the shingle pieces off the carriage; that it was about five feet from where he stood to where Goodell stood when cutting shingles; that it was the day before the accident that the foreman told the plaintiff to pick up the blocks; that he might have said, " I want you to do this, and watch the other job, too;" that he didn't say "jobs," for he didn't have any other; that he expected the plaintiff to watch the carrier, and remove the shingle blocks. The carrier would run after the trimmer had been shut down,— but would not be carrying anything, as there would be nothing to come over it. The trimmer carrier was running at the time of the accident, but he did not remember whether the trimmer had been stopped. Goodell testified that at the time of the accident he had put a piece of two by four on the table to be sawed, and he cut a sixteen-inch piece off, and threw it into the elevator, leaving a piece on the table sixteen or eighteen inches long. While stooping down to pick up another piece, the plaintiff reached over, and attempted to pick up the piece on the table, and the saw caught his hand, and drew it in; and he saw him jump back very much distressed, and grab his hand, and he said he had cut his hand badly, that " he didn't know he was so close to that saw." The witness said that there was never a time but he could see that saw; that there was sometimes a little dust there, and he would frequently clean it off, but the saw was generally pretty clear; that he got hurt by the slitting saw, situated not very far from the edge on the north side of the table, not over ten or twelve inches — it might have been eight or ten inches; that the foreman pointed down to the floor for him to pick the pieces up, and throw them over into the hole on the opposite side. "I presume he thought he should pick the pieces off the floor and the table as well;" and that the foreman so directed. To throw them in the

hole, he had to get them over the table; had to carry them around or put them over. It was a very fast-running saw; yet if a man would keep his eyes open and look, *if he knew the saw was there,* he was not in any danger. In throwing things over the table, he ought to keep it in mind all the time, but he did not have to do it that way. If he did do it, it was pretty risky. That witness would not risk it all the time. It was proved that the plaintiff had worked in a sawmill part of five seasons, and worked three seasons, feeding the stripper saw to the lath mill, a swift-running saw; that he had worked five or six months in knot sawing, and had edged shingles after they had been split, and had also split shingles for five or six months.

The defendant moved the court to direct a verdict in its favor, on the ground that defendant was not guilty of any negligence, and that plaintiff had been guilty of contributory negligence on his part, but the motion was denied. The court submitted to the jury the question whether there was any failure of duty on the part of the defendant (1) in not having the saw covered; (2) in not instructing the plaintiff in respect to the risks and dangers of his employment; (3) in requiring too arduous a service of the plaintiff,— saying to the jury that, if there was no negligence in any of these respects, then they should find for the defendant; that if there was some fault or neglect in these respects on the part of the defendant, which was the proximate cause of the injury, the jury would consider whether the plaintiff himself was in the exercise of ordinary and reasonable care at the time of the accident, and, if not, he would not be entitled to recover; that if the defendant was negligent in some of these respects, as stated, and the plaintiff was not guilty of negligence, and the negligence of the defendant was the proximate cause of the plaintiff's injury, then the plaintiff would be entitled to recover. The jury found for the plaintiff in the sum of $3,000. A motion was

made to set aside the verdict, and for a new trial, on the ground, among others, that the verdict was against the evidence, and for alleged errors in the charge of the court, and the refusal to direct a verdict for the defendant. The plaintiff had judgment on the verdict, from which the defendant appealed.

For the appellant there was a brief by *Losey & Woodward*, and oral argument by *G. M. Woodward*.

*C. L. Hood*, for the respondent.

PINNEY, J. We do not think that there is any ground upon which this judgment can properly be reversed. It may be that the verdict was not according to the merits, but that was a question for the circuit court to determine, in the exercise of a sound discretion, in passing on the motion for a new trial. This court cannot interfere unless there was a want of evidence to sustain the finding of the jury, and we do not think such is the case. We cannot therefore entertain or consider the question whether the verdict was in accordance with the preponderance of the evidence.

1. The plaintiff was a minor and had had considerable experience in working in sawmills. His own evidence appears to be somewhat contradictory as to his previous knowledge of the existence of the small circular saw, which was in extremely rapid motion, and by which he was injured. He denied that he ever noticed it, and said that he never took particular notice of the table. His subsequent statements tended to show that he had, in fact, some knowledge of its existence, but the effect of his evidence was for the jury. Less than three inches of the saw was in fact above the table, and sawdust, to some extent, accumulated about it when it was running unused. The evidence of the witness Peterson goes to show that it was not readily seen; that one could see it when it stopped, but it could not be

readily seen when running. "You could see it when it stopped, but, when it was running fast, you could see a blue streak,— that was all. You had to be pretty near to notice that the saw was there." Goodell's evidence goes to sustain this view. While he said it could be seen very plainly, he testified that "it was a very fast-running saw; yet if a man would keep his eyes open and look, *if he knew that the saw was there,* he was not in any danger." Goodell's evidence shows that throwing things over the table when the saw was running was pretty risky. The plaintiff was not warned or instructed of the danger arising from the presence of the small circular saw, and whether he should have been so warned, in view of all the facts and circumstances in evidence, and the experience he had had in sawmills, was a question for the jury.

2. The evidence tended to show, and was sufficient to justify the jury in finding, that the defendant was negligent in not covering the saw, or properly guarding it when it was unused and with no attendant. It was revolving with great velocity, under such circumstances that it might be approached by any of the very many operatives of the mill who might inadvertently come in contact with it, and receive serious injury. It does not admit of doubt that, if negligent in this respect, the defendant would be liable for the consequences of such negligence. It was defendant's duty to keep the premises where its servants and operatives were to work in a reasonably safe condition. Whether it had failed in its duty in this respect, to the plaintiff's injury, was, under the evidence in this case, a question of fact for the jury. It is, doubtless, a matter of importance that mill owners and proprietors of machinery should, in their own interest, to avoid injuries and imputations of negligence, exercise proper care and vigilance in guarding machinery, from the movements of which injury may occur to employees, when it may well be done at a reasonable expense and

without interfering with its regular operation and efficiency. Minors are constantly being employed in operating machinery, and about it. The evidence that shows that minors, and adults even, should be cautioned, in certain cases, as to the danger and risks of their employment, goes to show the duty of proprietors to guard machinery so far as necessary and reasonably practicable, to prevent accident and injury. But no rule can be laid down beyond declaring that the question whether the master has performed his reasonable duty is, ordinarily, one of fact for the jury.

3. There was evidence tending to show that at the time of the accident three different tasks had been allotted to the plaintiff to perform, and they were, to a very considerable extent, coincident in their requirements upon his attention, caution, and prompt action. One of these had been until then the sole duty of another employee. The plaintiff was a minor, and presumptively of immature judgment. The nature of the work he was to do, its requirements, and whether it was such as to confuse him, and disturb the fair exercise of his judgment, by hasty and inconsiderate action, which operated to his prejudice and peril, was a matter of fair inference from the evidence, which fully described the situation and the work required of him. Upon this branch of the case, too, we think the evidence justified the submission of the question whether too great service was required of the plaintiff, in view of his age, capacity, and judgment. This was properly for the jury.

Having arrived at the conclusion that there was proper evidence to sustain all three charges of negligence, the instruction as guarded, in effect that the jury might find for the plaintiff "if the defendant was negligent in some of these respects, as stated," was correct. For these reasons, we think the judgment was not erroneous.

*By the Court.*— The judgment of the circuit court is affirmed.